UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| TERRAL RIVER SERVICE, INC. AND NAVIGATORS INSURANCE COMPANY | CIVIL NO. 3:19-CV-00406 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| SCF MARINE, INC., AND VESSEL HOLDINGS 7, LLC | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is a Motion to Exclude the Opinion Testimony of Plaintiffs' Purported Expert Fred Budwine ("Motion to Exclude") [Doc. No. 55] filed by Defendants SCF Marine, Inc. ("SCF"), and Vessel Holdings 7, LLC. Plaintiffs Terral River Service, Inc. ("Terral") and Navigators Insurance Company ("Navigators") oppose the motion.

For the following reasons, Defendants' Motion to Exclude is GRANTED, and Fred Budwine's opinion testimony regarding the age of the hull fracture is EXCLUDED.

### I.  FACTS AND PROCEDURAL HISTORY

This case involves the salvage of a barge while in the custody and control of Terral.

Terral is Louisiana corporation with its principal place of business in Lake Providence and is engaged in the business of providing fleeting and harbor services on the Mississippi River. Terral is insured by Navigators. Terral owned and operated a facility in Lake Providence Harbor, Louisiana, at or about Lower Mississippi Mile 484 (the "facility"). The facility is located in a narrow finger of water adjoining the main channel.

SCF was the owner and/or operator of SCF 14023 (the "Barge"), which was approximately four years old. SCF and Terral contracted for SCF to provide the Barge.

On or about May 2, 2018, a third-party, C & M Marine, cleaned and inspected the Barge. C & M did not note any fracture. Defendants note that C & M is paid to repair barges, so it had an incentive to find any damage that would need repair.

SCF had the Barge delivered to the facility on May 7, 2018, around mid-day. Terral's harbor boat, the KIM KING, received the Barge from the line boat in the Mississippi River. Terral's crew helped remove the Barge from the tow.

The Barge has a raked bow. The knuckle is the curved piece of metal on the barge corner. The port bow rake knuckle faced out.

On the date of receipt, a Terral employee, Corey Pemberton ("Pemberton"), an experienced deckhand, inspected the Barge and filled out a Barge Inspection Report. Pemberton has inspected more than 1,000 barges in his career. He did not document any damage.

Between May 9 and 10, 2018, the Barge was partially loaded with approximately 1,266 tons of milled rice owned by Kennedy Rice Mill, LLC ("Kennedy"). A Terral fleet vessel monitored the Barge while it was at the facility, checking it regularly (although there was no further "inspection"). At the end of the day on May 10, 2018, the Barge was left alone at the dock.

On May 11, 2018, at approximately 5:45 a.m., the Barge was found partially submerged. The bow was submerged, and the stern was up in the air. The rice that had been loaded was damaged due to the partial submersion, and it was valued at approximately $595,454.20.[1]

Terral undertook salvage operations, and, on May 16, 2018, a salvor was able to raise the Barge. Once the Barge was raised, a fracture was discovered in the Barge's port bow rake

---

[1] Kennedy has been paid $595,454.20 for its damaged cargo and has, in exchange, assigned all rights to Terral and Navigators.

2

knuckle (the "fracture") that had allowed water into the bow rake compartment, causing the submersion. The fracture measured 12" in length and ¾" in width. There are green paint marks which adjoin the fracture on the outside of the Barge. The Barge itself is gray, not green. There were at least two green barges in the Terral fleets when the SCF barge was at the facility.

Terral claims that the fracture pre-existed delivery of the Barge and estimates it to have been two (2) to four (4) weeks old as of May 11, 2018. They assert that the partial submersion of the Barge was directly and proximately caused by the fault and negligence of SCF. To support these claims, Terral relies in part on the testimony of Fred Budwine ("Budwine"), an experienced marine surveyor. Budwine opines that the fracture "appeared to be old in nature— estimated 2-4 weeks . . . ." [Doc. No. 55-2, Exh. A].

On September 3, 2020, Defendants filed the instant Motion to Exclude, arguing that Budwine's opinion testimony fails to satisfy the requirements of Federal Rule of Evidence 702 because he is not qualified to testify as an expert regarding the age of the hull fracture and because his opinion is not the product of reliable principles or methods. Plaintiffs oppose the motion.

The motion is fully briefed, and the Court is prepared to rule.

**II.    LAW AND ANALYSIS**

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

3

   (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. When faced with expert testimony, the court must determine at the outset if the proponent of the evidence has proven its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592 n.10 (1993) (citing FED. R. EVID. 104(a) and *Bourjaily v. U.S.*, 483 U.S. 171, 175-76 (1987)). Courts have considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997).

  However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596).

  In determining whether to allow expert opinion testimony, a court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. Reliability and relevance, under Rule 702, are the hallmarks of admissible expert testimony. *Daubert*, 509 U.S. at 589; *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012). In making its reliability determination, the court must assess whether the "reasoning or methodology underlying the testimony is scientifically valid." *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). However, the focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)). In assessing relevance, courts "must determine whether that reasoning or methodology can be properly applied to the facts in issue." *Id.* (citing *Daubert*, 509 U.S. at 592-93).

Ultimately, "[t]he district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

Budwine, an experienced marine surveyor, testified on January 15, 2020, that he

5

determined the hull fracture to be two to four weeks old by looking "at the discoloration of the fracture and paint scrapes." [Doc. No. 55-3, Exhibit B, January 15, 2020 Budwine Depo., p. 73]. He looked "at the interior of the damage and the exterior of the damage . . ." *Id.* However, he does not "know when [the fracture] happened. . . . if it happened at the wash dock or it if happened when [the Barge] got put in tow . . . [or] if it happened in [Terral's] fleet." *Id.* at p. 76. Budwine, who is not a metallurgist or had any such training, testified that he would "have to be a metallurgist to tell" whether damages were eight days old versus fourteen days old. *Id.* at p. 81. This is a key issue in the case because if the fracture was 14 days old at the time the Barge was raised on May 16, the fracture would have occurred prior to Terral's receipt and custody of the Barge. If, on the other hand, the fracture was seven or eight days old at the time the Barge was raised on May 16, the fracture would necessarily have occurred while the Barge was in the exclusive care, custody, and control of Terral.

Budwine later issued a Rule 26(a)(2)(B) report, stating that his "opinion is unchanged: . . . the damages noted in the port bow knuckle of CHB SCF-14023 appeared to be old in nature." [Doc. No. 55-4, Exh. C].

He was again deposed on July 29, 2020, and testified at that time:

| | |
|---|---|
| Q: | So how is it, sir, that on January 15th of this year you testified that you cannot tell the difference between damage that is seven-days old and damage that is fourteen days old, and less than three months later you are suddenly able to state that the fracture in SCF 14023's hull was two to four weeks old? |
| Ms. Smith: | Objection. |
| A: | That opinion was in my original report. It is an opinion. It's not based on any scientific evidence. It's forty-three years of experience. ... I can't tell unless the rust was scraped and examined. I don't know that a metallurgist could tell that with just |

6

a visual inspection. He might be able to, but I cannot.

[Doc. No. 55-5, Exh. D, July 29, 2020 Budwine Depo., at pp. 19-20]. Budwine testified that he was not an expert on the process by which rust is formed, but that the appearance of the rust was the basis for his opinion. *Id*. at pp. 37-38. He explains that the "older the rust is the darker it gets. And then it will turn to scale." *Id.* at p. 37.

In this case, Defendants move to exclude Budwine on two bases: lack of qualifications and unreliable methods principles or methods. The Court considers each in turn.

### A. Qualifications to Testify as Expert

First, Defendants contend that Budwine's opinion should be excluded on the basis that he lacks the knowledge, training, or education necessary to reach a reliable opinion on the age of the hull fracture. While they acknowledge that Budwine has decades of experience as a marine surveyor, they point out that "[a] marine surveyor is 'someone who surveys, inspects, and determines damages to marine equipment when a marine casualty occurs.'" *Id.* at 55-1 (quoting *I&M Rail Link, LLC v. Northstar Nav., Inc*., 2001 WL 460028, at *5 (N.D. Ill. Apr. 27, 2001)). They argue that he does not have the experience or specialized knowledge to determine from the rust (the sole basis for his opinion) when the fracture occurred.

Terral responds that Budwine has more than 40 years of experience as a marine surveyor and was retained by Terral in this matter to determine "the nature and extent of the barge sinking." [Doc. No. 73, p. 4]. At the time he issued his opinion that the fracture appeared to be two to four weeks old, Budwine had not reviewed any fleet records and did not know how long the Barge had been at the Terral facility. Terral points out that Budwine testified that SCF's surveyor, Steve King ("King"), agreed with this estimate. [Doc. No. 73-4, July 29, 2020

7

Budwine Depo., pp. 19-20].[2]  Terral argues that it is uncontroverted that, when the two marine surveyors (one for Terral and one for SCF) left the Terral facility, they agreed as to the age of the fracture.  However, King's report left out the age estimate.

Terral did not file a reply to the opposition.

First, the Court notes that Budwine is an experienced marine surveyor, and no party disputes that he is qualified to testify in that regard.  Further, a person's experience may provide the necessary background to allow him to testify as an expert.  However, as to the disputed opinion, the Court finds that, by his own admission, Budwine is not a metallurgist and does not have training in that area or any other area that would allow him to date the age of the hull fracture.  Accordingly, the Court finds that he not qualified to opine as to the age of the hull fracture.

### B. Use of Reliable Principles or Methods

Defendants also challenge Budwine's testimony as to the age of the hull fracture on the basis that he did not use reliable principles or methods.  The Court also agrees with this contention.  Obviously, Budwine has examined many damaged barges in a forty-three year career, but, in this case, he admits that he just looked at the rust and that he did not scrape or examine.  Nor did he conduct any tests or use any methods or principles other than viewing the Barge and looking at the rust.  Under these circumstances, Budwine cannot opine as to the age of the hull fracture.

---

[2] Defendants cited to Budwine's deposition testimony, but, notably, left out the portion of the testimony when Budwine testified that SCF's surveyor agreed with his estimate of the age of the hull fracture.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude [Doc. No. 55] is GRANTED, and Budwine is precluded from offering an opinion as to the age of the hull fracture. Defendants did not challenge Budwine's testimony otherwise; therefore, Plaintiffs may otherwise call Budwine, and he may offer testimony as a fact witness and opinion testimony on other matters within his expertise as a marine surveyor.

MONROE, LOUISIANA, this 20th day of November, 2020.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**