UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

TERRAL RIVER SERVICE, INC.   CIVIL NO. 3:19-CV-00406
AND NAVIGATORS INSURANCE
COMPANY

VERSUS        JUDGE TERRY A. DOUGHTY

SCF MARINE, INC., AND VESSEL   MAG.JUDGE KAREN L. HAYES
HOLDINGS 7, LLC

RULING

Pending before the Court is Defendants' Motion for Summary Judgment on Plaintiffs'
Complaint [Doc. No. 53].   Defendants SCF Marine, Inc. ("SCF"), and Vessel Holdings 7, LLC.,
(collectively "Defendants") seek judgment as a matter of law dismissing the claims of Plaintiffs
Terral River Service, Inc. ("Terral") and Navigators Insurance Company ("Navigators")
(collectively "Plaintiffs").   Plaintiffs have filed an opposition [Doc. No. 63].   Defendants have
filed a reply to the opposition [Doc. No. 66].

For the following reasons, the motion is GRANTED.

## I.  FACTS AND PROCEDURAL HISTORY

This case involves the salvage of a barge while in the custody and control of Terral.

Terral is Louisiana corporation with its principal place of business in Lake Providence
and is engaged in the business of providing fleeting and harbor services on the Mississippi River.
Terral is insured by Navigators. Terral owned and operated a facility in Lake Providence Harbor,
Louisiana, at or about Lower Mississippi Mile 484 (the "facility"). The facility is located in a
narrow finger of water adjoining the main channel which essentially has no current.

SCF was the operator of SCF 14023 (the "Barge"), which was approximately four years

old. SCF and Terral contracted for SCF to provide the Barge.

On or about May 2, 2018, a third-party, C & M Marine, cleaned and inspected the Barge. C & M did not note any fracture. Defendants note that C & M is paid to repair barges, so it had an incentive to find any damage that would need repair.

Five days later, SCF had the Barge delivered to the facility on May 7, 2018, around mid-day. Terral's harbor boat, the KIM KING, received the Barge from the line boat in the Mississippi River.   Terral's crew helped remove the Barge from the tow.

The Barge has a raked bow. The knuckle is the curved piece of metal on the barge corner. The port bow rake knuckle faced out.

On the date of receipt, a Terral employee, Corey Pemberton ("Pemberton"), an experienced deckhand, inspected the Barge and filled out a Barge Inspection Report. Pemberton has inspected more than 1,000 barges in his career. He did not document any damage.

Between May 9 and 10, 2018, the Barge was partially loaded with approximately 1,266 tons of milled rice owned by Kennedy Rice Mill, LLC ("Kennedy").

On May 11, 2018, at approximately 5:30 a.m., employees of the KIM KING, while checking and monitoring the Barge, identified nothing wrong.   Approximately 20 minutes later, the Barge was found partially submerged. The bow was submerged, and the stern was up in the air. The rice that had been loaded was damaged due to the partial submersion, and it was valued at approximately$595,454.20.[1]

Terral undertook salvage operations, and, on May 16, 2018, a salvor was able to raise the Barge. Once the Barge was raised, a fracture was discovered in the Barge's port bow rake

---

[1]Kennedy has been paid $595,454.20 for its damaged cargo and has, in exchange, assigned all rights to Terral and Navigators.

knuckle (the "fracture") that had allowed water into the bow rake compartment, causing the submersion. The fracture measured 12" in length and ¾" in width. There are green paint marks ("witness marks") which adjoin the fracture on the outside of the Barge. The Barge itself is gray, not green. There were at least two green barges in the Terral fleets when the SCF barge was at the facility.

Terral claims that the fracture pre-existed delivery of the Barge and estimates it to have been two (2) to four (4) weeks old as of May 11, 2018. They assert that the partial submersion of the Barge was directly and proximately caused by the fault and negligence of SCF. To support these claims, Terral relied in part on the testimony of Fred Budwine ("Budwine"), an experienced marine surveyor. Budwine opined that the fracture "appeared to be old in nature— estimated 2-4 weeks . . .  ."  [Doc. No. 55-2, Exh. A]. However, in a separate Ruling, the Court granted Defendants' motion to exclude the opinion testimony of Budwine [Doc. No. 82].   The Court held that Budwine is precluded from offering opinion testimony on the age of the fracture because he lacked the qualifications to offer such an opinion and his opinion was not based on reliable principles or methodology. [*Id.*]

Terral additionally relied on the testimony of Bob Bartlett ("Bartlett"), a metallurgist and mechanical engineer, to support their claim.   In a separate Ruling, the court granted in part and denied in part Defendants' motion to exclude Bartlett's opinion testimony. [Doc. No. 110].   The Court excluded much of his opinion testimony but allowed the portions of Bartlett's report and testimony which rely on green witness marks.

Defendants assert in their motion that, after almost two years of litigation and extensive discovery, there is no competent proof that the fracture existed when Terral accepted the barge.

Terral's own employee, Pemberton, inspected the barge on May 7, 2018, when Terral received delivery, and found it be undamaged at that time. Furthermore, the independent barge cleaning and repair company, C&M Marine, confirms the same undamaged condition on May 2, 2018, only five days earlier. Because Plaintiffs have the burden of proof and all of Plaintiffs' claims require proof of the fracture before delivery to Terral, and because no evidence of this essential element exists, Defendants contend that Plaintiffs cannot prevail. Accordingly, summary judgment for Defendants on Plaintiffs' complaint should be entered.

Plaintiffs respond that it is Defendants who have the burden of proof, and, therefore, Defendants must prove the fracture did not exist when the Barge was delivered to Terral. Plaintiffs further contend that Pemberton's inspection was limited and that he likely would have not been able to spot the fracture.   With regard to the C&M Marine inspection, Plaintiffs contend that Defendants have presented insufficient evidence as to who inspected the barge or the scope of the inspection.   Additionally, Defendants have offered no evidence of what may have happened during the period between the C&M Marine inspection and the day the barge was delivered to Terral.

The motion is fully briefed, and the Court is prepared to rule.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment

Summary judgment Ashall [be] grant[ed] . . .   if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.@   Fed. R. Civ. P. 56(a).   A fact is Amaterial@ if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.   *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is Agenuine@ if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.   *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).   The nonmoving party must show more than Asome metaphysical doubt as to the material facts.@   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.   *Anderson*, 477 U.S. at 255.

In *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir.1978), the Fifth Circuit held that "[i]f a decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved."   In a later decision, the Fifth Circuit elaborated:   "Although a district court must be aware that assessments of credibility come into sharper focus once live witnesses are heard, *Nunez* establishes that even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result."   *Matter of Placid Oil Co.,* 932 F.2d 394, 398 (5th Cir. 1991) (citing *Nunez*, 572 F.2d at 1124).   This is so because "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as

5

the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts. If a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should 'draw his inferences without resort to the expense of trial.'"  *Id.* (quoting *Nunez*, 572 F.2d at 1124).

B.   **Analysis**

1.   **Burden of Proof**

Plaintiffs devote much of their opposition to arguing that Defendants will have the burden of proof at trial. Plaintiffs contend that, under maritime law, a barge owner has the duty to furnish a barge (for loading) in a seaworthy condition. *The Southwark*, 191 U.S. 1, 48 L. Ed. 65, 24 S. Ct. 1 (1903).   Plaintiffs submit that Defendants have the burden to prove that the barge was seaworthy at the time of delivery, and that Defendants have no such proof.

Plaintiffs further contend that, under bailment law, a bailee is liable if the property bailed is damaged by an accident or by some other means, due to the bailee's fault or failure to exercise the proper degree of care, and the responsibility for any such damage to or loss of the property then falls on the bailee and not the bailor. 19 *Williston on Contracts* § 53:5 (4th Ed.2003). Plaintiffs further contend that, as the bailor, SCF bears the burden of proving Terral's failure to exercise due care. *Reel Therapy Charters, Inc. v. Marina Mgmt., Inc*., No. 3:02CV510/RV, 2003 WL 23514559, at *7 (N.D. Fla. Dec. 31, 2003.   Plaintiffs argue that Defendants have no such proof.

Finally, Plaintiffs contend that even under the maritime negligence standard, they have met their burden of proving that (1) the defendant owed a duty to plaintiff, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4)

the plaintiff sustained an injury. *SCF Waxler Marine LLC v. M/V ARIS T*, 427 F. Supp. 3d 728, 758 (E.D. La. 2019.

The Court finds that it is Plaintiffs who have the burden of proof.   Plaintiffs must prove that they suffered damages because the barge was unseaworthy and/or Defendants committed negligence or other breach of duty. *Jones v. Terrebone Menhaden, Inc*., 429 F. 2d 575 (5th Cir. 1970); *Apache Corp.v. Kim Susan, Inc., et al*., Nos. 89-4445, 90-0336. 1992 WL 84269 (E.D. La. Apr. 22, 1992). To prove an unseaworthiness claim, Plaintiffs must show, among other things, that Defendants delivered a barge that was not fit to carry cargo. *Fernales Shipping Co., S.A. v. Bonaire Petroleum Corp*., 733 F. 2d 381, 384 (5th Cir. 1984). To prove a claim of negligence, Plaintiffs must show SCF owed a duty to them, breach of that duty, and a causal connection between the breach and Plaintiffs' injury.

In the "somewhat unusual situation" of a barge loader suing a barge owner for the sinking of the owner's barge, it is the plaintiff barge loader who bears the burden of proving that the barge was unseaworthy at the time the plaintiff barge loader took custody and control of the barge. *Consolidation Coal Co. v. U.S. Steel Corp*., 364 F. Supp. 1071, 1074 (W.D. Pa. 1973); *see also, Dunkard Min. Co. v. Mon River Towing*, No. 88-2181, 1989 WL 121053 at *3 (W.D. Pa., Oct. 3, 1989) ("where, as here, the bailee claims that the damage was caused by the ship owner in delivering an unseaworthy vessel, the burden of proving the unseaworthiness of the vessel is on the bailee.")

The Court, therefore, finds that Plaintiffs will have the burden of proof. The Court will next address the merits.

## 2.     The Merits

Every claim Plaintiffs assert, for unseaworthiness, negligence, or otherwise, incorporates this same essential allegation, i.e., that the fracture found after the Barge was raised, was present when Terral received the barge on May 7, 2018.

In support of their motion, Defendants argue that Plaintiffs have insufficient evidence to raise a genuine dispute as to any material fact and they are entitled to judgment as a matter of law.   Terral's own Barge Inspection Report, prepared by Pemberton, identifies no damage to the barge. The Barge Inspection Report evidences a detailed examination of, and finds no damage to the barge, including the knuckles, the part that Plaintiffs claim had a preexisting fracture at the port bow. Moreover, Terral's May 7, 2018 inspection is consistent with the inspection of C&M Marine five days earlier, on May 2, 2018, which showed the same thing: no damage. Additionally, the only source for Plaintiffs' contention that the fracture was 2 to 4 weeks old is the testimony of Budwine, which at the time the Motion for Summary Judgment was filed was contested in a Motion in Limine.   That evidence has since been excluded by this Court.

Plaintiffs devote the major portion of their opposition to arguing that Defendants have the burden of proof, but the Court has resolved that issue in favor of Defendants.   There is very little in their opposition to contradict the summary judgment evidence that has been cited by Defendants. With regard to Pemberton's inspection and report, Plaintiffs merely argue that his inspection was limited, and that it was unlikely that he would have been able to see the one foot long, ¾" wide fracture.   This argument is not sufficient to meet their burden of proof.

Plaintiffs rely on their expert, Bartlett, but only to the extent that he opined on the currents in the inlet where the barge was located.   However, the Court has excluded that

8

testimony as well and, thus, it cannot serve to raise a genuine issue of material fact for trial.

Finally, although not mentioned in their opposition to the Motion for Summary Judgment, Plaintiffs raised one additional argument in responding to the Motion in Limine to exclude Bartlett's testimony. It is undisputed that there are green witness marks in the area of the fracture.    He opines that these marks were caused by a green kevel, not another vessel. However, Plaintiffs have offered no evidence that such green kevel was only present in an area when the barge was under the control and custody of Defendants.

The Court agrees with Defendants that Plaintiffs have failed to "put up" evidence sufficient to establish the existence of elements essential to their claims. There is simply no evidence that between C & M Marine's inspection of the barge and its delivery to Terral there was an event that caused the damage. To find a genuine issue of material fact for trial, the Court would have to accept that Plaintiffs' own employee, who has inspected more than 1,000 barges in his career, failed to see a one-foot fracture AND green witness marks on the barge. Accordingly, Defendants are entitled to judgment as a matter of law dismissing Plaintiffs' claims.

III.    **CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment on Plaintiffs' Complaint [Doc. No. 53] is GRANTED.   All of Plaintiffs' claims against all Defendants are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 30th day of December, 2020.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

9